(4) Vexation, worry, annoyance, and loss of time caused plaintiffs by inscription, $10,000.

The record shows that, in placing the affidavit on record, defendant acted in good faith and under the advice of competent counsel.

We have repeatedly held that "courts cannot inflict damages on a party for resorting in good faith to law for the protection of his rights." Bladg v. Giacomino, 170 La. 638, 128 So. 661, 662; Girot v. Graham, 41 La. Ann. 511, 6 So. 815; Brelet v. Mullen, 44 La. Ann. 199, 10 So. 865.

In New Orleans Land Co. v. Slattery, 145 La. 256, 82 So. 215, 216, plaintiff was unsuccessful in establishing title to immovable property and defeated a profitable sale of the property, during the pendency of the suit, by the recordation of a lis pendens notice under Act No. 22 of 1904.

In that case the court said: "A plaintiff who has reason to believe that he has a good cause of action is not rendered liable in damages to the person sued by the finding of the court that the plaintiff had not a good cause of action. Henry v. Dufilho, 14 La. 48. An action for damages for slander of title, like a suit for damages for malicious prosecution, cannot be maintained if the act complained of was done without malice and was founded upon probable cause or was prompted by a reasonable belief in a just cause of action. Terrill v. Chambers, 12 La. 582; Walden v. Peters, 2 Rob. 331, 38 Am. Dec. 213; Sibley v. Lay, 44 La. Ann. 936, 11 So. 581; Morgan v. Illinois Central Railroad, 117 La. 671; 42 So. 216; Kirk v. Wiener-Loeb Laundry Co., 120 La. 820, 45 So. 738."

As the affidavit of defendant was not recorded maliciously and without probable cause, plaintiffs are not entitled to recover the damages herein claimed. Hartz v. Stauffer et al., 163 La. 382, 111 So. 794; Graffagnini v. Shnaider, 164 La. 1108, 115 So. 287.

Judgment affirmed.

(133 So. 352)

**FARRAR v. JOHNSON et al.**

No. 29114.

March 2, 1931.

Edward Everett, Jr., and J. R. Dawkins, both of Farmerville, for appellant.

Harvey G. Fields, of Farmerville, for appellee Mrs. H. C. Johnson.

J. W. Elder, of Ruston, for appellee Mrs. Eugenia Farrar.

O'NIELL, C. J.

This suit was, at the beginning, an action for a partition of the estate of H. C. Johnson, deceased, brought by a daughter against the coheirs and the widow of H. C. Johnson. The widow is not the mother of the Johnson heirs. In answer to the suit, one of the defendants, J. B. Johnson, a son of the deceased, set up a claim against the estate for $1,620 and a claim against the widow for $71. The other heirs denied that the estate owed J. B. Johnson any part of the $1,620, and set up a counterclaim against him for $35. The widow also denied owing him anything. The suit for a partition of the estate was not contested. The district court gave judgment ordering the property of the estate to be sold to effect a partition, rejecting the demand of J. B. Johnson against the widow, and his demand to be recognized as a creditor of the estate, and declaring him indebted to the estate for $5. He has appealed from the decision.

Appellant's claim against the estate of his father is for $20 traveling expenses, $50 for feeding a horse, and $1,550 for nursing appellant's father and attending to the latter's affairs during his illness. The claim for traveling expenses, consisting of eight small items amounting to $20, was properly rejected, because the evidence showed that the expenses were incurred for J. B. Johnson's personal account and benefit. His claim for feeding H. C. Johnson's horse was properly rejected, because the evidence showed that J. B. Johnson had the use of the horse, which use was worth more than the cost of feeding the horse.

Appellant's claim of $1,550 for nursing his father and attending to the latter's affairs during his illness was exaggerated, and was properly rejected on the ground that there was no intention on the part of either the father or the son that the services should be paid for, beyond the accommodations which the son was receiving from the father at the time, in the way of using the latter's farming implements, animals, etc. There is always a presumption, when such services are rendered by a son or daughter to the parent, that the services are gratuitous; and the law will not allow compensation in such cases without proof of a promise or expressed intention on the part of the parent to pay for the services. Succession of Ploton, 36 La. Ann. 211; Succession of Littell, 50 La. Ann. 299, 23 So. 314; Succession of Oubre, 109 La. 516, 33 So. 583; Succession of Daste, 125 La. 657, 51 So. 677, 29 L. R. A. (N. S.) 297; Latour v. Guillory, 134 La. 332, 64 So. 130; Succession of Brand, 162 La. 880, 111 So. 267.

Appellant's claim of $71 against the widow of H. C. Johnson consists of a board bill of $50 and a claim of $21 for half of the taxes for 1925, which appellant alleged he had paid on certain community property, half of which belonged to the widow. We judge from the evidence that there was no intention on the part of the appellant to charge the widow of his father board during the brief period when she was in appellant's home. As to the claim for taxes, the tax receipt shows, and it was acknowledged on the trial of this case, that the taxes on the estate

were paid with funds belonging to the estate, so that each heir contributed his proportion of the taxes. It appears that the taxes thus paid, amounting to $42, were assessed against two tracts of land, one having an area of 62½ acres, belonging to the separate estate of the deceased, H. C. Johnson, and appraised at $1,210 in these proceedings, and the other tract having an area of 180 acres, belonging to the second community, and appraised at $900 in these proceedings. But the tax receipt does not show what proportion of the $42 of taxes was assessed against the land belonging to the separate estate of H. C. Johnson, or what proportion was assessed against the community property. Besides, it is very probable, if not quite certain, that the payment of the taxes was made with community funds. Appellant's claim against the widow, therefore, is not sustained by the evidence.

Inasmuch as J. B. Johnson is the only appellant, the counterclaim which the coheirs brought against him, for $35, is not now in dispute, except as to the $5 allowed by the district judge. That was for a yearling which the appellant got from his father's estate and appropriated to his own use. The amount allowed as the value of the animal is certainly not excessive.

The judgment is affirmed.